FILED

February 28, 2017

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 10:21 AM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MURFREESBORO

| | | |
|---|---|---|
| **MALCOLM S. EDWARDS,** | ) | **Docket No. 2016-05-0727** |
| **Employee,** | ) | |
| | ) | |
| **v.** | ) | **State File No. 38774-2016** |
| | ) | |
| **JOB SHOPPE USA,** | ) | |
| **Employer,** | ) | **Judge Dale Tipps** |
| **And** | ) | |
| | ) | |
| **RIVERPORT INS. CO.,** | ) | |
| **Carrier.** | ) | |
| | ) | |

---

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS

---

This matter came before the undersigned workers' compensation judge on February 23, 2017, on the Request for Expedited Hearing filed by Malcolm Edwards. The present focus of this case is whether Mr. Edwards is entitled to medical and temporary disability benefits for his alleged neck injury. The central legal issue is whether Mr. Edwards is likely to establish at a hearing on the merits he suffered an injury arising primarily out of and in the course and scope of his employment. For the reasons set forth below, the Court holds Mr. Edwards failed to do so, but he is entitled to a return visit with his authorized treating physician, Dr. Jacob Schwarz.

### History of Claim

On May 10, 2016, his second day of work for Job Shoppe, Mr. Edwards began having a burning and tingling in his neck and right arm while lifting automobile seats onto an assembly line. He reported this to his supervisor several times but kept trying to work and eventually completed his shift. Mr. Edwards testified that his pain was different from a chronic condition he suffered and was much more intense after the lifting injury.

1

The chronic condition involved a significant history of neck problems, including two prior workers' compensation claims and three cervical surgeries. He has received pain management treatment for his neck pain for several years.

Pain management records show that, shortly before the May 10 alleged injury date, Mr. Edwards saw Dr. Richard Adkins on April 3 for complaints of back and neck pain, described as aching and tingling. He described the severity of his pain without medication as an "8." Dr. Adkins diagnosed cervical postlaminectomy syndrome and stenosis, and he renewed Mr. Edwards' prescriptions of Mobic, Soma, Oxycodone, and Fentanyl. Mr. Edwards returned to Dr. Adkins with the same complaints on April 27.

Mr. Edwards also saw physician assistant, Brandy Brown, at One Stop Medical on April 30 for complaints of pain under his right arm, extending to his hand. Ms. Brown treated Mr. Edwards for a biceps strain. Mr. Edwards returned with the same complaints on May 6. He also reported chronic neck pain and requested a referral to Dr. Schwarz, the neurosurgeon who performed his three prior neck surgeries.

Job Shoppe did not initially provide any treatment when Mr. Edwards reported his May 10 injury, so he sought treatment on his own the next day at One Stop Medical. Mr. Edwards told the One Stop nurse practitioner, Kelly Kelley, that his right arm had worsened since the previous night and he was unable to move it. He returned the next week requesting something for his right arm pain. Ms. Kelly told Mr. Edwards that she could not approve pain medication because he was under a pain management contract. She also noted:

> As pt was leaving the clinic and walking to his vehicle and getting into it, pt took off his arm sling from his right arm using both arms and then threw the arm sling up on the dash of the vehicle and using both arms to turn the wheel to drive off.

Job Shoppe eventually provided a panel of physicians from which Mr. Edwards selected Dr. Caleb Wallwork. Dr. Wallwork saw Mr. Edwards on May 20 and noted his history of cervical surgical procedures. Mr. Edwards described developing pain in his right arm on his second day of work. In Dr. Wallwork's Preliminary Report to Employer, he diagnosed cervical disc disease and neck strain. Under the heading "Work Related," he checked the "yes" box next to his neck strain diagnosis. Dr. Wallwork referred Mr. Edwards to Dr. Schwarz and instructed Mr. Edwards to remain off work until he saw Dr. Schwarz. He also referred Mr. Edwards back to his regular pain management provider.

Mr. Edwards returned to pain management and reported an increase in the level and the character of his pain, which now included throbbing and numbness. Dr. Adkins' note includes, "Advised pt to reach back out to W/C as he reports he hasn't been contacted and it's been 10 days since his right shoulder injury at work."

Pursuant to Dr. Wallwork's referral, Job Shoppe authorized Mr. Edwards to see Dr. Schwarz at Vanderbilt Medical Center. The only medical record submitted from Dr. Schwarz's office indicates Mr. Edwards saw Angela Hatchett, APN, on July 20. He reported pain in his neck and right arm that began with a May 10 lifting incident at work. Ms. Hatchett diagnosed right cervical radiculopathy. She prescribed physical therapy and continuing pain management. Ms. Hatchett also noted Mr. Edwards' case manager requested that he be allowed to see Dr. Schwarz.

Mr. Edwards testified Job Shoppe subsequently denied his claim and refused to authorize his physical therapy or allow him to return to Dr. Schwarz. He seeks resumption of his medical treatment and payment of temporary disability benefits from May 20, 2016, the date Dr. Wallwork took him off work, through the present.

**Findings of Fact and Conclusions of Law**

The following legal principles govern this case. To prove a compensable injury, Mr. Edwards must show that his alleged injury arose primarily out of and in the course and scope of his employment. Tenn. Code Ann. § 50-6-102(14) (2016). To do so, he must show his injury was primarily caused by an incident, or specific set of incidents, identifiable by time and place of occurrence. *Id*. at § 50-6-102(14)(A). Further, he must show, "to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." *Id*. at § 50-6-102(14)(C). "Shown to a reasonable degree of medical certainty" means that, in the opinion of the treating physician, it is more likely than not considering all causes as opposed to speculation or possibility. *Id*. at § 50-6-102(14)(D).

However, because this case is in a posture of an Expedited Hearing, Mr. Edwards need not prove every element of his claim by a preponderance of the evidence in order to obtain relief. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). Instead, he must come forward with sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. *Id*.; Tenn. Code Ann. § 50-6-239(d)(1).

The Court first notes that Job Shoppe presented no testimony or other proof regarding Mr. Edwards' description of the events of May 10. Thus, there is no dispute that he established a specific incident, identifiable by time and place. The question to be resolved, therefore, is whether he appears likely to prove the incident is the primary cause of his current symptoms and need for medical treatment. Applying the foregoing principles to the facts of this case, the Court cannot find at this time that Mr. Edwards is likely to meet this burden.

The Court recognizes that Mr. Edwards' preexisting condition does not foreclose

3

the possibility of recovery in this case. *See Miller v. Lowe's Home Ctrs.,* 2015 TN Wrk. Comp. App. Bd. LEXIS 40, at *9-12 (Oct. 21, 2015). The shortcomings in this interlocutory request are not rooted in his medical history but in his medical proof. Although the Court admitted records from numerous medical providers into evidence, the only medical opinion addressing causation is Dr. Wallwork's Preliminary Report to Employer. While Dr. Wallwork checked a box indicating that Mr. Edwards' neck strain was "work related," this does not address the current legal standard for causation. As noted above, Mr. Edwards, in order to prevail at trial, must prove that his condition (or any aggravation of his preexisting condition) was *primarily caused* by the May 10 incident. The mere fact that Mr. Edwards' neck strain might be work-related to some unspecified degree is insufficient for the Court to find that his lifting accident constituted more than fifty percent of the cause of his disability or need for medical treatment, considering all causes.

Because Mr. Edwards has not demonstrated he is likely to prevail at a hearing on the merits on the issue of causation, the Court cannot award the requested temporary disability benefits at this time. However, for the following reasons, the Court finds Mr. Edwards is entitled to additional medical treatment.

Under the Workers' Compensation Law, "the employer or the employer's agent shall furnish, free of charge to the employee, such medical and surgical treatment . . . made reasonably necessary by accident[.]" Tenn. Code Ann. § 50-6-204(a)(1)(A) (2016). Employers are also required to offer a panel of physicians "from which the injured employee shall select one (1) to be the treating physician." *See* Tennessee Code Annotated section 50-6-204(a)(3)(A)(i). Further, an employee does not have to prove compensability in order to establish the employer is obligated to provide a panel. *McCord* at *16, 17. Explaining this approach, the Appeals Board stated:

> A contrary rule would require many injured workers to seek out, obtain, and pay for a medical evaluation or treatment before his or her employer would have any obligation to provide medical benefits. The delays inherent in such an approach, not to mention the cost barrier for many workers, would be inconsistent with a fair, expeditious, and efficient workers' compensation system.

*Id*. at 9, 10.

Although Job Shoppe ultimately provided a panel and authorized the resulting referral to Dr. Schwarz, it terminated medical treatment before Dr. Schwarz addressed the question of causation. The question thus becomes whether, when the authorized treating physician has not addressed causation, the burden of paying a doctor to evaluate the cause of the employee's symptoms falls upon the employer or the employee. As noted above, an employer is generally required to provide a panel upon the provision of notice

4

of a work-related injury. Although "there is no right to a causation opinion as such,"[1] the Court finds Job Shoppe's termination of medical benefits at this juncture to be tantamount to the actions of the employer in *McCord*. As the Appeals Board in *McCord* noted, this essentially forces Mr. Edwards to "seek out, obtain, and pay for a medical evaluation or treatment" before Job Shoppe has fully complied with its statutory duty to provide a panel and the attendant medical evaluation and treatment. Consequently, Job Shoppe must return Mr. Edwards to Dr. Schwarz until the doctor has an opportunity to address causation.

Job Shoppe argued during the hearing that the medical records show that Mr. Edwards did not suffer a compensable injury on May 10. Instead, it contended that, not only did Mr. Edwards have a preexisting condition, but also he was already complaining of exactly the same symptoms in the days leading up to his alleged accident date. The Court is sympathetic to this argument and notes it might have merit if there were any medical proof to support it, but there is none. While Job Shoppe could have provided the relevant medical records to Dr. Schwarz and asked him for a causation opinion, it elected not to do so. Instead, it chose to substitute its medical judgment for the professional opinion of a qualified physician. Neither Job Shoppe nor this Court is qualified to make such a determination. The Court is constrained to the record before it, because "judges, like lawyers, are poorly positioned to formulate expert medical opinions." *Love v. Delta Faucet Co., et al.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 45, at \*15-16 (Sept. 19, 2016); *and* s*ee Scott v. Integrity Staffing Solutions*, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at \*8 (Aug. 18, 2015) ("Judges are not well-suited to second-guess a medical expert's treatment, recommendations, and/or diagnoses *absent some conflicting medical evidence or some other countervailing evidence properly admitted into the record.*") (emphasis added).

For the foregoing reasons, the Court finds Mr. Edwards provided sufficient evidence to satisfy his burden at this interlocutory stage that he is entitled to return to Dr. Schwarz for evaluation and, if necessary, treatment of any cervical injuries or aggravations primarily caused by the May 10 work incident, in accordance with Tennessee Code Annotated section 50-6-204(a)(1)(A).

**IT IS, THEREFORE, ORDERED** as follows:

1. Job Shoppe or its workers' compensation carrier shall provide Mr. Edwards with medical treatment for any work-related neck injuries as required by Tennessee Code Annotated section 50-6-204, to include Job Shoppe or its workers' compensation carrier authorizing a return visit to Dr. Schwarz. Medical bills shall be furnished to Job Shoppe or its workers' compensation carrier by Mr. Edwards or the medical providers.

---

[1] *See Ronald Pool v. Jarmon D&Q Transport*, 2016 TN Wrk. Comp. App. Bd. LEXIS 1, at \*9 (Jan. 4, 2016).

5

2. Mr. Edwards' request for temporary disability benefits is denied at this time.

3. This matter is set for a Scheduling Hearing on April 13, 2017, at 9:00 a.m. You must call 615-741-2112 or toll free at 855-874-0473 to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).

4. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2016). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 28th day of February, 2017.**

_____
**Judge Dale Tipps**
**Court of Workers' Compensation Claims**

6

**APPENDIX**

Exhibits:
1. Affidavit of Malcolm Edwards
2. Indexed medical records
3. April, 13, 2010 Order Approving Workers' Compensation Settlement
4. March 30, 2007 Approval of Workers' Compensation Settlement Agreement

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Granting Medical Benefits was sent to the following recipients by the following methods of service on this the 28th day of February, 2017.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Keith Jordan | | | X | jordanlawoffice@comcast.net |
| Ryan Saar | | | X | rsaar@morganakins.com |

_____
**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

8